UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) ) | |
| v. | ) ) | Criminal No. 07-74-B-H-16 |
| **LISA DELAURENTIIS,** | ) ) ) | |
| Defendant | ) | |

### ORDER ON GOVERNMENT'S MOTION IN LIMINE RE: USE OF CERTAIN STATEMENTS BY DEFENDANT AND DEFENDANT DeLAURENTIIS' MOTION IN LIMINE TO EXCLUDE THE FRUITS OF HER COOPERATION

The defendant Lisa DeLaurentiis entered into a plea agreement and cooperation agreement with the government. In both of those agreements, she waived explicitly her right not to have things she said thereafter used against her if she breached her agreement. At a subsequent guilty plea proceeding, she (through counsel) refused to answer satisfactorily the court's standard Rule 11 questions. As a result, I rejected the proffered guilty plea.[1]

The case now is proceeding to jury trial in Bangor in August. The government has asked for an in limine ruling "that the defendant's statement made at her Rule 11 hearing and the statements she made during the course of her cooperation with the Government are admissible in the Government's case-in-chief at the defendant's trial." Gov't's Mot. in Limine Re: Use of Certain

---

[1] After a later hearing on a motion to suppress, I granted her motion to suppress statements that she made to law enforcement at the time of her arrest because they were in violation of her right to
*(continued on next page)*

Statements by Def. at 1 (Docket Item 685). DeLaurentiis has asked that "any and all evidence" be excluded at trial "unless and until the government proves affirmatively that the evidence is derived from a legitimate source wholly independent of the immunized statements and other cooperation provided by defendant DeLaurentiis." Def. Delaurentiis' Mot. in Limine to Exclude the Fruits of Her Cooperation at 1 (Docket Item 734). I **GRANT** the government's motion and **DENY** DeLaurentiis's motion.

DeLaurentiis relies upon the immunity provision of the Mandatory Plea Agreement Supplement. It provides: "In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to this Agreement and the proffer agreement executed on November 7, 2008, or any information directly or indirectly derived therefrom against Defendant in any criminal case" (with certain inapplicable exceptions). Mandatory Plea Agreement Supplement at 2-3 (Docket Item 593). The government relies upon certain provisions of both agreements. The Plea Agreement states: "Defendant agrees to plead guilty to the Second Superseding Indictment herein pursuant to Rule 11 of the Federal Rules of Criminal Procedure" and to be sentenced accordingly. Agreement to Plead Guilty at 1 (Docket Item 592). The Plea Agreement also states that a breach of the agreement occurs "[i]f Defendant violates or fails to perform any obligations under this agreement." Id. at 3-4. The Mandatory Plea Agreement Supplement states that breach occurs if the obligant "violates or fails to perform any obligations" under either agreement. Mandatory

---

an attorney and involuntary.

2

Plea Agreement Supplement at 3.  Both documents provide that if the defendant breaches, the United States

> may fully prosecute the defendant on all criminal charges that can be brought against the defendant.  With respect to such a prosecution . . . [, t]he United States may use any statement that the defendant made pursuant to this agreement, including statements during plea discussions and plea colloquies, and the fact that the defendant pleaded guilty, and Defendant hereby waives any claim under Rule 410 of the Federal Rules of Evidence or Rule 11(f) of the Federal Rules of Criminal Procedure that such statements and guilty plea are inadmissible.

Plea Agreement at 4; Mandatory Plea Agreement Supplement at 3.  The Mandatory Plea Agreement Supplement further provides that if the defendant breaches "[t]he United States may further make derivative use of statements made pursuant to this Agreement and Defendant thereby waives any right to claim that evidence presented in such a prosecution is tainted by virtue of the statements the Defendant has made pursuant to this Agreement."  Mandatory Plea Agreement Supplement at 3.

The provisions of evidence Rule 410 and criminal Rule 11 that DeLaurentiis explicitly waived are her rights not to have her plea agreement or associated statements admitted into evidence in later proceedings.  The United States Supreme Court has held that such waivers are enforceable.  <u>United States v. Mezzanatto</u>, 513 U.S. 196, 209 (1995).  The only question on these cross-motions, then, is whether DeLaurentiis breached either or both agreements, because a breach permits use of the statements.  Since the Mandatory Plea Agreement Supplement (the cooperation agreement that includes the immunity provision) incorporates by reference the Plea Agreement (it says that "[i]f Defendant violates

or fails to perform any obligations under . . . the plea agreement (a 'breach'), the United States will be released from its obligations hereunder and may fully prosecute the defendant on all criminal charges . . . ."), I deal only with the former. The Plea Agreement provides that the court must determine whether a breach occurred and the burden of proof is on the government, by a preponderance of the evidence. Plea Agreement at 4.

### *Did DeLaurentiis breach the Plea Agreement?*

I conclude that DeLaurentiis breached the Plea Agreement. Although at the outset of the Rule 11 colloquy she initially tendered a plea of guilty, she consciously and intentionally failed to complete the Rule 11 proceeding. Specifically, her lawyer refused to answer my question whether he was satisfied that she was pleading guilty because she was actually guilty. Instead, he told me that he had no evidence of her actual guilt, that all the evidence the government had provided him failed to establish her guilt, that any inculpatory statements she had made upon arrest ought to be suppressed, that for him to answer my question in this context would violate Maine Bar Rules and the attorney-client privilege, and that he was not authorized (by his client) to answer my question. Tr. of Rule 11 Hr'g at 5-7 (Docket Item 613). This was no misunderstanding on his or DeLaurentiis's part. Both knew that her guilty plea would not go forward without an answer to the question. The issue had been discussed in at least two preceding chambers conferences in the first of which the lawyer said that answering the question would not be a problem and in the second of which he said that it would be a problem. I told DeLaurentiis that she could engage other

4

counsel, if she chose, so as to complete the guilty plea successfully. Id. at 7. In an effort not to come between her and her lawyer I also told her that she was entitled to keep her current counsel.[2] Id. Nevertheless she did not give her lawyer authority to answer my question.[3] I conclude, therefore, that the government has met its burden of proof to show that DeLaurentiis failed to perform her obligations under the Plea Agreement.[4]  There is nothing ambiguous about either the agreement or her conduct.[5]

---

[2] The transcript reveals that I told her to "stick with" her current counsel. I meant to say that she was entitled to "stick with" her current counsel, not to urge her one way or the other. That is her choice to make, not mine.

[3] In an Appendix, I address the recent controversy over this particular question that the judges in the District of Maine have used for decades.

[4] Because DeLaurentiis and her lawyer aborted the Rule 11 proceeding, I never reached the stage of actually approving the plea agreement and the cooperation agreement. Indeed, customarily I do not rule on the acceptability of the Plea Agreement until sentencing, after I have reviewed the Presentence Report.  Nevertheless, DeLaurentiis does not argue that the agreements are unenforceable, and indeed affirmatively seeks to enforce the Cooperation Agreement. I note certain statements by the First Circuit in the context of plea agreements that have not secured judicial approval, United States v. Bennett, 103 F. App'x 409 (1st Cir. 2004) (noting that "[e]very plea agreement is subject to court approval," and thus "no rights remained under the proffered plea agreement once [the trial judge] rejected [the defendant]'s guilty plea" for lack of factual basis); United States v. Lopez, 944 F.2d 33, 37 (1st Cir. 1991) (describing "a[ ] [plea] agreement which was never enforceable between the contracting parties due to the failure of a condition precedent; here, the approval of the district court"), but they arise in unique factual contexts (defendant Bennett agreed that there was no binding plea agreement; defendant Lopez was trying to secure the benefits of someone else's plea agreement). The First Circuit has also said that the analysis may be different where, as here, the defendant has breached the agreement. United States v. Ventura-Cruel, 356 F.3d 55, 63 n.10 (1st Cir. 2003). Moreover, it has assumed the enforceability of a plea agreement even where a previously approved plea and plea agreement has been withdrawn. United States v. Newbert, 504 F.3d 180, 185-86 (1st Cir. 2007). Other Circuits seem uniform in holding that agreements are contractually enforceable between the parties whether or not they have secured judicial approval. United States v. Scruggs, 356 F.3d 539 (4th Cir. 2004); United States v. Swick, 262 F.3d 684 (8th Cir. 2001); United States v. Young, 223 F.3d 905 (8th Cir. 2000); United States v. Birch, 156 F.3d 1315 (D.C. Cir. 1998); United States v. Wright, 2 F.3d 66 (4th Cir. 1993); United States v. Hagen, 2008 WL 5392092 (W.D. N.C. 2008); United States v. El-Amin, 268 F. Supp. 2d 639 (E.D. Va. 2003).

[5] I do remain gravely concerned whether this is DeLaurentiis's own considered decision, not merely her lawyer's attempt to make a point. The lawyer's obligation is to act in DeLaurentiis's own best interests, not for some abstract proposition that he endorses.

Since DeLaurentiis has waived her rights under Rule 410 and Rule 11 and has breached the Plea Agreement, the government is entitled to use all the evidence in question against her.

**SO ORDERED.**

**DATED THIS 29TH DAY OF JULY, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

***APPENDIX***

For decades the judges of this District have asked a defendant's lawyer, after the defendant has said that she is pleading guilty, whether the lawyer is satisfied that the defendant is pleading guilty because she is actually guilty. (My recollection is that I inherited the question when I first took the bench in 1990.) Our careful colloquies have served the criminal justice process well. Successful challenges to guilty plea proceedings either on appeal or later § 2255 motions are hen's-tooth rare in this District. A challenge to this particular question first arose within the past year. Since the mere fact that the question has been unchallenged for so long does not guarantee its legitimacy, however, I examine the issue briefly.

First, the source of the controversy. In United States v. Godin, Crim. No. 07-06-P-S-03 (D. Me.), after defense counsel filed a motion to withdraw his client's guilty plea asserting that his client was indeed not guilty, the Assistant United States Attorney suggested that such a position was in direct contravention of the express representations defense counsel made to the court at the Rule 11 hearing. That defense lawyer then concluded that answering the court's question created a potential ethical dilemma. Tr. of Change of Plea in United States v. Jenkins, 08-67-P-H-01 (D. Me) at 9-10 (Docket Item 190). The same lawyer then pursued the issue in United States v. Jenkins, Crim. No. 08-67-P-H-01 (D. Me.). I insisted upon an answer, and a mandamus petition was unsuccessful. United States v. Jenkins, Crim. No. 08-67-P-H-01 (D. Me.) (Docket Item 217) (Order of the Court of Appeals for the First Circuit denying writ of mandamus). However, I recognize that denial of mandamus is not a decision on the merits, and therefore continue

7

the inquiry.  That lawyer engaged Attorney MacColl, now the lawyer for DeLaurentiis, to "represent" him during the Jenkins proceedings and proffered him as an expert on the Maine Bar Rules.  On January 4, 2009, Attorney MacColl wrote a letter to the judges of the court objecting to the question and giving his reasons.  Attorney MacColl has pressed his position in this case on behalf of DeLaurentiis.

There seem to be three major objections to the question as posed in DeLaurentiis' case:

1. It is not explicitly called for by Rule 11.  That statement, as far as it goes, is true.  But the rule "impose[s] a duty on the court in cases where the defendant pleads guilty to satisfy itself that there is a factual basis for the plea before entering judgment.  The court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, *or otherwise*, that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Fed.R. Crim. P 11 advisory committee's note (emphasis added).  Thus, the question is well within the authority of Rule 11.

2. It is contrary to the Maine Bar Rules.  Maine Bar Rule 3.7(e)(2)(v) currently provides: "In appearing in a professional capacity before a tribunal, a lawyer shall not[ ] . . . [a]ssert a personal opinion as to . . . the guilt or innocence of an accused."  DeLaurentiis's lawyer maintains that the Rule 11 question violates this provision.  I examined the history of the Bar Rule in <u>Jenkins</u> and described it on the record at the time of the first aborted plea, a proceeding that

Attorney MacColl attended. I ruled explicitly then that answering the question did not violate the Maine Bar Rules. Thus, a lawyer is not at risk of offending, given my ruling. Moreover, I said that I would consider any contrary written opinion from Bar Counsel, but I have been provided none. Finally, that particular Bar Rule was amended by the Maine Supreme Judicial Court on February 26, 2009, effective August 1, 2009, to make it absolutely clear that it does not apply in guilty plea proceedings. As of August 1, it will provide that "[a] lawyer shall not . . . *in trial* . . . state a personal opinion as to the . . . the guilt or innocence of an accused." Me. Bar R. 3.4(e) (emphasis added). Thus, if the Bar Rule were truly the obstacle, DeLaurentiis could have notified the government and the court through her counsel that she would remove the obstacle to the plea on August 1.

    3.    Answering the question violates the attorney-client privilege. This appears to be the real reason for the refusal to answer the question. Attorney MacColl said that he was "not authorized" to answer the question. Tr. of Rule 11 Hr'g at 6. I conclude, therefore, that DeLaurentiis (to whom the privilege belongs, not her lawyer) told MacColl not to answer the question. Instead, MacColl told me that all the evidence *except* that provided by the defendant, was inconsistent with her guilt.

DeLaurentiis has not provided any persuasive argument that answering the question violates the attorney-client privilege. If the lawyer says "yes," I ask no further questions on the subject. I do not ask the lawyer what the defendant told him. If the lawyer says "no," then I inquire more diligently of the defendant to determine whether there really is a factual basis for the plea. This is what

9

happened in United States v. Bruno-Roman, Crim. No. 05-104-P-H, cited in the appellate briefs on mandamus in Jenkins. Godin is the classic case that shows why the question is relevant. There, Judge Woodcock initially accepted the defendant's guilty plea. Later, Judge Singal learned that Godin and his lawyer both believed that Godin was innocent, but had pursued the guilty plea because of fear of the harsh sentence. But if that is the nature of the decision, it is more properly treated as an Alford plea,[6] and the court and the government need to know that an Alford plea is being offered, and act accordingly. The plea may or may not be accepted with that full knowledge.

The lawyer's confirmation is extremely important. Any experienced trial judge knows that at a Rule 11 proceeding, a defendant often behaves like a deer caught in the headlights. Defendants regularly turn to their lawyers for a signal on how to answer the court's questions, clearly frozen by the monumental consequences of the process. That is why the judges of this District have long distributed, in advance, copies of their Rule 11 questions, at first in hard copies and now electronically on the Court's website, so that lawyers and clients can examine them and discuss them at leisure in advance of the actual hearing. The lawyer's considered confirmation, upon review of all the evidence, that he is satisfied that the defendant is pleading guilty because she is actually guilty, helps provide assurance that a fearful defendant's guilty plea deserves acceptance.

---

[6] An Alford plea permits an individual accused of crime to "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." See North Carolina v. Alford, 400 U.S. 25, 37 (1970).

Moreover, if this question truly is problematic, then there are other questions that will be foreclosed. For example, from the court's indictment waiver: "Has anything come to your attention that casts any doubt on the defendant's competence to waive indictment?" and "Are you aware of any reasons why I should not permit this defendant to waive indictment?" and from the Rule 11 script: "Are you satisfied that [the defendant] understands the charges contained in [the Count[s]] of the indictment/information and the penalties that can be imposed?" (A similar question is asked at the waiver of indictment.) Theoretically, any of these questions could implicate things that the defendant has said to her lawyer.

Finally, if there is an attorney-client privilege issue implicated in the question, I see no reason why the defendant should not waive it for the limited purpose of answering the question and persuading the judge to accept her guilty plea on the basis that she truly is guilty. Here, Attorney MacColl's statements about the evidence gave me real reason to doubt the factual basis for DeLaurentiis's plea. In telling MacColl that he was not authorized to answer my question, I can only conclude that DeLaurentiis intentionally reserved something in her guilty plea.